1

**UNITED STATES DISTRICT COURT**

2

**DISTRICT OF NEVADA**

3

* * *

4

CHRISTOPHER J. WILLING,                   Case No. 2:14-cv-01122-APG-PAL

5

               Plaintiff,

6

    v.                                        **ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

7

ARMS, *et al.*,                                   (ECF Nos. 73, 91, 95, 109, 110, 113, 123, 124)

8

               Defendants.

9

10

    *Pro Se* plaintiff Christopher J. Willing brings this lawsuit under 42 U.S.C. § 1983 alleging

11

violation of his constitutional rights with respect to the medical treatment he received as a detainee

12

at the Nye County Detention Center.  Presently before me are summary judgment motions filed by

13

defendants Healthcare Partners (ECF No. 73), Nye County (ECF No. 95), and Deputy Arms (ECF

14

No. 110).[1]  Those motions demonstrate that Deputy Arms did not contribute to any alleged injuries

15

Willing suffered, and that neither Nye County nor Healthcare Partners had a custom or policy that

16

amounted to deliberate indifference of Willing's constitutional rights.  Thus, I would grant the

17

motions for summary judgment.  However, the defendants have not properly authenticated the

18

19

exhibits on which they rely, so I cannot grant the motions.  Instead, I will allow the defendants a

20

brief opportunity to authenticate the exhibits.

21

/ / / /

22

/ / / /

23

24

_____

25

    [1] A number of additional motions have spawned from the summary judgment motions:
Willing's Motion in Evidence in Support of Opposition to Summary Judgment (ECF No. 91), Nye

26

County and Deputy Arms' Motion for Leave to Supplement (ECF No. 123), Healthcare Partners'
Joinder in that motion (ECF No. 124), Willing's Motion for Nye County to Show Good Cause for

27

Violating Discovery Request or Alternative to Compel (ECF No. 113), and Nye County's Motion
to Strike (ECF No. 109).

28

I.    **BACKGROUND**

Willing was a pretrial detainee at the Nye County Detention Center ("NCDC") from August 12, 2013 through December 29, 2014. ECF No. 110 at 15 ¶ 4.  NCDC had a Policy and Procedure for Medical Services that specifically prohibited jail employees from refusing or hindering medical care to inmates. ECF No. 95-4 at 2.  Nye County had an Indigent Inmate Policy pursuant to Nevada Revised Statutes Chapter 428, which NCDC incorporated. ECF No. 95-3 at 26.  Pursuant to those policies, on at least eight occasions Willing was transported to and treated at Healthcare Partners, a private entity in Pahrump, Nevada, for a variety of non-emergent medical conditions. ECF No. 73-1 at 1-5.

Willing complains about the treatment he received relating to a fractured clavicle that he claims occurred when he fell on some stairs at NCDC sometime in November 2013.  Willing was transported to Healthcare Partners on January 20, 2014 complaining of left clavicle pain and a "tumor" on his shoulder. ECF No. 73-1 at 1 ¶ 1.  Dr. Engelberg diagnosed the "tumor" as a possible lipoma and referred Willing to a general surgeon. ECF No. 73-2 at 32.  Dr. Engelberg further noted that Willing "denied being there for his collar bone or other complaints but stated that he is here for a tumor on his shoulder…." *Id.*  Willing disputes that he refused treatment for his fractured clavicle because he listed it as a chief complaint at the visit. ECF No. 73-2, Exh. C at 16:1-20.[2]  Willing contends that he should have received x-rays and a referral for an orthopedic surgeon. ECF No. 73-2, Exh. C at 28:11-22.

On March 23, 2014, Willing was transported to Healthcare Partners for head and neck pain he claims started when he fell out of his out of his bunk and hit his head on the concrete floor. ECF No. 73-1 at 2 ¶ 3.  Willing claims this occurred because of the fractured clavicle, as he had to sleep

---

[2] All citations to Exhibit C (ECF 73-2 at 68-86) reference the page number of Willing's deposition transcript, rather than the ECF page number.

on his left side which caused his arm to become "paralyzed." ECF No. 69 at 4.  Willing was prescribed Cyclobenzaprine HCI (muscle relaxer) and ibuprofen for the pain and x-rays were subsequently taken of his C-spine. ECF No. 73-2 at 14; ECF No. 73-2 at 43, 50.

On April 12, 2014, Willing was transported to Healthcare Partners complaining of urinary frequency. ECF No. 73-1 at 2 ¶ 5.  Willing was treated and an x-ray was ordered for his clavicle injury. ECF No. 73-2 at 48.  Willing was continued on the muscle relaxer and ibuprofen as treatment for the pain. *Id.*

On April 20, 2014, Willing was transported to Healthcare Partners by Deputy Arms for the x-ray of his clavicle. ECF No. 73-1 at 2 ¶ 6.  Dr. Flowers reviewed the x-ray before Willing left the facility. ECF No. 73-2 at 10.  Willing claims that Dr. Flowers indicated he was going to refer him to an orthopedic surgeon for the clavicle fracture. ECF No. 73-2, Exh. C at 37:1-7.  Willing further alleges that Deputy Arms told the nurse or x-ray technician that "Nye County would not pay for it and not to submit the referral." ECF No. 73-2, Ex. C at 37:7-15.  Deputy Arms denies telling the x-ray technician not to submit any referral for an orthopedic surgeon. ECF No. 110 at 15 ¶ 9.  Deputy Arms recalls Dr. Flowers indicating that Willing's clavicle was broken and would need surgery to correct, but "it is not life threatening," and "that any surgery to correct his clavicle would be cosmetic in nature." ECF No. 110 at 15 ¶¶ 7, 9; ECF No. 114 at 54.

On April 21, 2014 Radiologist Benjamin Muir, MD read the x-ray of Willing's clavicle and reported: "Healed left mid clavicle fracture with deformity. This fracture appeared acute on the prior comparison exam [of 11/26/2012]. There is mild inferior angulation distal fracture." ECF No. 73-2 at 41.

On October 12, 2014 Willing was transported to Healthcare Partners for headaches and chronic pain relating to the collarbone injury. ECF No. 73-1 at 3 ¶ 9.  Willing claims that Dr. Flowers asked him why he never went to see the orthopedic surgeon in April. ECF No. 73-2, Exh.

C at 46:17-23.  Dr. Flowers reported that Willing was "[s]howing chronic pains, will repeat fill his ibuprofen, and will see if an orthopedic consult will determine if there is anything else to do about the clavicle fracture." ECF No. 73-2 at 44.  The referral to the orthopedic surgeon indicates "[f]racture of clavicle with delayed healing." ECF No. 75 at 12.

On December 9, 2014 Willing was transported to Dr. Sep Bady at Advanced Orthopedics and Sports Medicine. ECF No. 73-1 at 3 ¶ 10.  Another x-ray of Willing's clavicle was taken and compared to the April 20, 2014 images. ECF No. 73-2 at 60.  The radiologist reported:

> FINDINGS:
> Redemonstrated[3] healed midshaft clavicular fracture with deformity, with mild inferior angulation of the distal fracture fragment, similar to previous. No definite acute fracture. There is no evidence of dislocation or subluxation. Bone mineralization is normal. There are no soft tissue abnormalities.
>
> IMPRESSION:
> Stable deformity with healed midshaft left clavicular fracture

*Id.* Dr. Bady did not recommend surgery to correct the deformity because Willing's midshaft clavicular fracture was healed. ECF No. 73-2 at 60:17-19.  According to Willing, Dr. Bady also noted that re-braking and plating the injury would "probably just hurt as bad." ECF No. 73-2, Exh. C at 60:9-16.

Willing filed suit on July 7, 2014. ECF No. 1.  Willing filed his First Amended Complaint ("FAC") on August 21, 2015, asserting claims against Deputy Arms, Sargent Martinez, Nye County, Nye County Detention Center, Healthcare Partners, and Lieutenant Beard. ECF No. 69. Defendant Nye County Detention Center had previously been dismissed on August 4, 2015 (ECF No. 62) but was incorrectly named in the caption of the FAC.  On August 26, 2016, Defendants Martinez and Beard were dismissed for failure to file proof of service. ECF No. 122.  Thus, the

---

[3] "Re" is a prefix meaning "again" and "demonstrate" means "to show clearly." Merriam-Webster's Collegiate Dictionary (10th Ed. 2001).  Accordingly, in this context "redemonstrated" means to show again.

1   remaining defendants are Healthcare Partners, Nye County, and Deputy Arms.  They now seek

2   summary judgment in their favor.

3   **II.     LEGAL STANDARDS**

4         **A.  Summary Judgment**

5         Summary judgment is appropriate when the pleadings, discovery responses, and affidavits

6   "show there is no genuine issue as to any material fact and that the movant is entitled to judgment

7   as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P.

8   56(c)).  For summary judgment purposes, the court views all facts and draws all inferences in the

9   light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793

10  F.2d 1100, 1103 (9th Cir. 1986).

11        If the moving party demonstrates the absence of a genuine issue of material fact, the burden

12  shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for

13  trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.  To

14  establish a factual dispute, the nonmoving party need not establish a material issue of fact

15  conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury

16  or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac.*

17  *Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

18        However, the nonmoving party "must do more than simply show that there is some

19  metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th

20  Cir. 2002) (internal citations omitted).  He "must produce specific evidence, through affidavits or

21  admissible discovery material, to show" a sufficient evidentiary basis on which a reasonable fact

22  finder could find in his favor. *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991);

23  *Anderson*, 477 U.S. at 248-49.  At summary judgment, a court's function is not to weigh the

24  evidence and determine the truth but to determine whether there is a genuine issue for trial. *See*

25  *Anderson*, 477 U.S. at 249.

26        Finally, a party must support or refute the assertion of a fact with admissible evidence. Fed.

27  R. Civ. P. 56(c)(1); *Orr,* 285 F.3d at 773; *Harris v. Graham Enterprises, Inc.,* 2009 WL 648899, at

28  *2 (D. Ariz. Mar. 10, 2009).  As the summary judgment procedure is the pretrial functional

equivalent of a directed-verdict motion, it requires consideration of the same caliber of evidence that would be admitted at trial. *Anderson*, 477 U.S. at 251 (citing *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 745 n. 11 (1983)).  Thus, it is insufficient for a litigant to merely attach a document to a summary judgment motion or opposition without affirmatively demonstrating its authenticity.

### B.  42 U.S.C. § 1983

A plaintiff may bring a suit under § 1983 to redress "rights, privileges, or immunities secured by the [United States] Constitution and [federal] laws" that occur under the color of state law.  42 U.S.C. §1983.  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quotation omitted).  "To state a claim under § 1983, a plaintiff must [1] allege the violation of a right secured by the Constitution and laws of the United States, and must [2] show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citation omitted).

For purposes of claims brought under § 1983, a private entity like Healthcare Partners is treated as a municipality. *Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1139 (9th Cir.2012). Municipalities are not "vicariously liable for the deprivation of constitutional rights by employees." *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs. Of City of N.Y.,* 436 U.S. 658, 694 (1978)).  To be liable, the municipality itself must deliberately implement a policy or custom which causes a constitutional violation.

### III.    ANALYSIS

In Count I of the FAC, Willing alleges that on January 20, 2014, Nye County and Healthcare Partners intentionally delayed his medical treatment in violation of the Eighth Amendment.  Willing contends that Healthcare Partners' physician, following an "unwritten" policy with Nye County, did not refer him to an orthopedic surgeon for his fractured clavicle.

In Count II of the FAC, Willing alleges that on April 20, 2014, Nye County, Healthcare Partners, and Deputy Arms intentionally denied and delayed his medical care in violation of the

1    Fourteenth Amendment when Deputy Arms, while following the unwritten policy, told Healthcare

2    Partners' nurse or x-ray technician not to submit a referral for an orthopedic surgeon because Nye

3    County would not pay for it.

4         In Count III of the FAC, Willing alleges that on May 5, 2015 and June 5, 2014, Nye County

5    intentionally delayed his medical treatment in violation of the Eighth Amendment when Sergeant

6    Martinez followed the unwritten policy by refusing to address Willing's request to be taken to a

7    different medical provider.  Willing also alleges that in October or November 2014 Healthcare

8    Partners intentionally delayed his medical treatment in violation of the Eighth Amendment when a

9    referral for an orthopedic surgeon was never faxed to NCDC, but was instead mailed to Willing.

10        Willing contends that these constitutional violations caused him harm because by the time

11   he saw an orthopedic surgeon, his collarbone had healed improperly, resulting in the orthopedic

12   surgeon not recommending surgery to correct the deformity.  As such, Willing claims he is now

13   left with a deformed clavicle and chronic pain.

14        Willing's claims are tied to an alleged unwritten policy between Nye County and Healthcare

15   Partners.  He alleges that this unwritten policy involved Healthcare Partners not referring indigent

16   inmates for follow-up diagnoses or treatment unless they were "dying" so Nye County would not

17   have to pay for the treatment.  Both Healthcare Partners and Nye County deny having any such

18   unwritten policy to deny medical care based on inmates' inability to pay.

19   **A. The Defendants' Failure to Authenticate Evidence**

20        "A trial court can only consider admissible evidence in ruling on a motion for summary

21   judgment." *Orr*, 285 F.3d at 773 (citations omitted).  The Ninth Circuit has "repeatedly held that

22   unauthenticated documents cannot be considered in a motion for summary judgment." *Id.*  The

23   defendants attempt to authenticate their exhibits through the affidavits of their lawyers. ECF No.

24   73-2 at 1-2; ECF No. 95-1 at 1-2; ECF No. 110 at 18-19 (attaching ECF No. 95-1 despite the fact

25   that it relates to different exhibits).  This is improper.

26        Documents may be authenticated through (1) the personal knowledge of a party who attests

27   that the document is what it purports to be, or (2) any other manner permitted by Federal Rules of

28   Evidence 901(b) or 902.  Documents authenticated through personal knowledge must be attached

7

1    to or referenced either in an affidavit signed by a person with personal knowledge about the

2    document (such as the custodian of the document kept in the ordinary course of a business) or in

3    properly authenticated deposition testimony in which the same information was elicited.[2]

4        Healthcare Partners offers the declaration of its counsel stating that the exhibits are "true

5    and correct [copies] of Plaintiff's medical records from Healthcare Partners." ECF No. 73-2 at 1.

6    Nothing indicates that counsel is the custodian of records of those documents, that she is aware of

7    how the records were kept and retrieved, or that she has personal knowledge of those records.  She

8    could not authenticate those records at trial, and thus she cannot authenticate them in the motion.

9    *Anderson*, 477 U.S. at 251 (holding that because summary judgment is the pretrial functional

10   equivalent of a directed-verdict motion, it requires consideration of the same caliber of evidence

11   that would be admitted at trial).  Nye County and Deputy Arms' attempts to authenticate their

12   exhibits (except for the deposition transcript) are similarly defective.

13       As discussed below, the motions for summary judgment would be granted if the evidence

14   they are based upon were properly authenticated.  It would be a waste of judicial and the parties'

15   resources to proceed to trial simply to authenticate the evidence.  Justice dictates that I afford the

16   defendants a brief opportunity to authenticate their exhibits.  If they can properly do so, I will grant

17   the motions for summary judgment.  If they cannot, then I will deny the motions.  In the interim,

---

[2] *See Orr*, 285 F.3d at 773-74 ("documents authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of Fed. R. Civ. P. 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."); *see also id.* at 774 (deposition transcripts are authenticated "by attaching the cover page of the deposition and the reporter's certification to every deposition extract submitted.  It is insufficient for a party to submit, without more, an affidavit from her counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a 'true and correct copy.'  Such an affidavit lacks foundation even if the affiant-counsel were present at the deposition.").

1   and presuming the defendants will be able to authenticate their exhibits, I set forth below my

2   analysis of the merits of the defendants' motions.

3       **B.  Claim Against Deputy Arms (Count II)**

4       Willing's only claim against Deputy Arms alleges that on April 20, 2014, Deputy Arms told

5   Healthcare Partners' nurse or x-ray technician not to submit Dr. Flowers' referral for the orthopedic

6   surgeon. ECF No. 69 at 5.  Willing asserts that this denial or delay of medical care constituted

7   deliberate indifference, in violation of his Fourteenth Amendment rights.  Deputy Arms moves for

8   summary judgment arguing that there is no evidence that he intentionally delayed or denied

9   Willing's treatment.

10       The medical treatment a prisoner receives is subject to scrutiny under the Eighth

11   Amendment.  Deliberate indifference to a prisoner's serious medical needs or a serious risk to his

12   safety violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle*

13   *v. Gamble*, 429 U.S. 97, 104 (1976).  Because pretrial detainees' rights under the Fourteenth

14   Amendment are comparable to prisoners' rights under the Eighth Amendment, however, the court

15   applies the same analysis. *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1243-44 (9th Cir.2010)

16   *overruled on other grounds by Castro v. Cty. of Los Angeles*, No. 12-56829, 2016 WL 4268955

17   (9th Cir. Aug. 15, 2016).  Thus, I analyze Willing's Fourteenth Amendment claim against Deputy

18   Arms under the Eighth Amendment.

19       The Eight Amendment "embodies broad and idealistic concepts of dignity, civilized

20   standards, and decency" by prohibiting the imposition of cruel and unusual punishment by state

21   actors. *Estelle*, 429 U.S. at 102 (quotation omitted).  The Constitution's stricture against the

22   "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials

23   to the medical needs of prisoners. *Id.* at 104.  It is well-settled law that "deliberate indifference to

24   a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

25       In the Ninth Circuit, deliberate indifference claims are analyzed under a two-part test.  "In

26   order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show

27   … an objective standard—that the deprivation was serious enough to constitute cruel and unusual

28   punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d

1060, 1066 (9th Cir. 2014). The objective prong examines whether the plaintiff has a "serious

medical need." *Id.* (citing *Estelle*, 429 U.S. at 104.) To show a serious medical need, the plaintiff

must demonstrate that "failure to treat a prisoner's condition could result in further significant

injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th

Cir. 2006) (quotation omitted).

The subjective prong considers whether defendant's response to the need was "deliberately

indifferent." *Id.* To establish deliberate indifference, the plaintiff must show "(a) a purposeful act

or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the

indifference[,]" although it does not have to be "substantial" harm. *Id.* (citation omitted). Deliberate

indifference "may appear when prison officials deny, delay or intentionally interfere with medical

treatment, or it may be shown by the way in which prison officials provide medical care." *Id.*

(quotation omitted). Deliberate indifference is present when a prison official "knows of and

disregards an excessive risk to inmate health or safety; the official must both be aware of the facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he must

also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Finally, where delay in

receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further

injury. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) *overruled on other grounds by*

*WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1977).

Taking the evidence in the light most favorable to Willing, Deputy Arms cannot be held

liable for any of Willing's alleged damages. Willing asks me to infer that not being referred to an

orthopedic surgeon on April 20, 2014 caused him harm or further injury because the fracture could

have been surgically repaired at that time. However, the medical evidence unequivocally

establishes that Willing's clavicle fracture was already healed by April 20, 2014. Specifically, the

April 20, 2014 x-ray showed a "[h]ealed left mid clavicle fracture with deformity." ECF No. 73-2

at 63. The December 9, 2014 x-ray "[r]edemonstrated [a] healed midshaft left clavicular fracture

with deformity . . . similar to previous." ECF No. 73-2 at 60. Not only did Dr. Bady not recommend

surgery to correct the deformity in December but according to Willing, he opined that re-braking

and plating the injury would "probably hurt just as bad." ECF No. 73-2, Ex. C at 60:9-16. Thus,

1    by April 20, 2014 Willing's clavicle was already healed (properly or not), so Deputy Arms' alleged

2    refusal to allow a referral to a surgeon could not have contributed to Willing's damages.  Beyond

3    the allegations that his clavicle is deformed and he experiences pain—which were already present

4    in April 2014 according to the medical records—Willing provides no other evidence that delayed

5    treatment caused additional damages or that Deputy Arms is responsible for his injuries.   No

6    reasonable trier of fact could conclude that Deputy Arms' actions on April 20, 2014 caused or

7    contributed to Willing's damages.

8         Moreover, "[u]nder the [deliberate indifference] standard, the prison official must not only

9    'be aware of the facts from which the inference could be drawn that a substantial risk of serious

10   harm exists,' but that person 'must also draw the inference.'" *Gibson, v. Cty. of Washoe, Nev.*, 290

11   F.3d 1175, 1188 (9th Cir. 2002) *overruled on other grounds by Castro v. Cty. of Los Angeles*, No.

12   12-56829, 2016 WL 4268955 (9th Cir. Aug. 15, 2016) ("If a person should have been aware of the

13   risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe

14   the risk.").  Willing fails to establish that Deputy Arms drew an inference that a risk of serious harm

15   existed (or even that a genuine dispute exists about such an inference).  Deputy Arms understood

16   Dr. Flowers' diagnosis to be that Willing's clavicle needed surgery to correct the deformity, but it

17   was not "life threatening" and "that any surgery to correct his clavicle would be cosmetic in nature."

18   ECF No. 110 at 15 ¶¶ 7, 9.  Willing has not presented evidence to establish that Deputy Arms drew

19   an inference that a risk of serious harm existed, given that the injury was at least five-months old

20   and non-emergent, and any surgical correction would be cosmetic only. *Farmer*, 511 U.S. at 842

21   ("Whether a prison official had the requisite knowledge of a substantial risk is … subject to

22   demonstration in the usual ways, including inference from circumstantial evidence … and a

23   factfinder may conclude that a prison official knew of a substantial risk from the very fact that the

24   risk was obvious.").

25         Finally, before it can be said that a prisoner's rights to medical care have been abridged,

26   "the indifference to his medical needs must be substantial." *Broughton v. Cutter Labs*, 622 F.2d

27   458, 460 (9th Cir. 1980).  There is no dispute that Willing experienced pain as a result of the healed

28   clavicle injury.  However, Healthcare Partners' physicians treated the pain.  Willing was prescribed

ibuprofen and muscle relaxer in early 2014 and Healthcare Partners' physicians continued this course of treatment through 2014.  Approximately eleven months after the injury occurred, Dr. Flowers noted that the pain appeared to be chronic and referred Willing to an orthopedic surgeon "to determine if there is anything else to do about the clavicle fracture." ECF No. 73-2 at 44. Willing does not allege that this treatment was inappropriate or that Deputy Arms interfered with it in any way.

No reasonable jury could find that Deputy Arms was deliberately indifferent to Willing's serious medical needs.  Accordingly, summary judgment will be granted in favor of Deputy Arms if he is able to properly authenticate the exhibits supporting his motion.

### C. *Monell* Claims against Nye County and Healthcare Partners (Counts I, II, and III)

Local government units are "persons" for purposes of § 1983. *Monell v. Dep't of Soc. Servs. Of City of N.Y.,* 436 U.S. 658, 690 (1978).  A municipal entity may be liable under § 1983 "only where the municipality itself causes the constitutional violation through execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Ulrich v. City & Cty. of S.F.*, 308 F.3d 968, 984 (9th Cir. 2002) (quoting *Monell*, 436 U.S. at 694).

To establish municipal liability, a plaintiff must demonstrate (1) that a municipal employee violated the plaintiff's rights, (2) that the municipality had customs or policies that amount to deliberate indifference of the plaintiff's constitutional rights, and (3) that these customs or policies were the moving force behind the employee's violation of the plaintiff's constitutional rights. *Gibson*, 290 F.3d at 1193–94 (citation omitted).

Willing alleges that Nye County and Healthcare Partners had an unwritten policy to not refer indigent inmates for follow-up diagnoses or treatment unless they were dying so Nye County would not have to pay.  Even assuming *arguendo* that Willing suffered a constitutional deprivation, Nye County or Healthcare Partners can be liable only if Willing shows that the constitutional deprivation "was caused by employees acting pursuant to an official policy or 'longstanding practice or custom,' that the injury was caused or ratified by an individual with 'final policy-

1    making authority.'"[4] *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d 1143, 1151 (9th Cir.

2    2011) (quoting *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008)).  Willing

3    does not argue, nor is there evidence to support, that any person with "policy-making authority"

4    from Nye County or Healthcare Partners either committed the alleged constitutional violations or

5    ratified the conduct of any employee.

6           Willing has not presented any evidence from which a rationale trier of fact could infer that

7    any policy of Nye County was the moving force behind the alleged constitutional deprivation.  A

8    policy is a "deliberate choice to follow a course of action … made from among various alternatives

9    by the official or officials responsible for establishing final policy with respect to the subject matter

10   in question." *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (alteration in

11   original) (quotation omitted).  Nye County has presented evidence showing that it had an official

12   Indigent Inmate Policy regulating access to medical care pursuant to NRS 211.140, and that NCDC

13   had a policy and procedure for medical services.  Neither policy permits non-medical jail

14   employees to diagnose or treat an inmate.  Willing offers no evidence that either policy contributed

15   to a violation of his rights.[5]

16          "Absent a formal governmental policy, [the plaintiff] must show a 'longstanding practice

17   or custom which constitutes the standard operating procedure of the local government entity.'"

18   *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 978 F.2d 1342,

19   1346-47 (9th Cir. 1992)).  The custom or policy must be so "persistent and widespread that it

20   constitutes a permanent and well settled city policy." *Id.* (quoting Monell, 436 U.S. at 658).

21   "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be

22   founded upon practices of sufficient duration, frequency and consistency that the conduct has

23   become a traditional method of carrying out policy." *Id.* (citation omitted).

24   _____

25          [4] As explained above*,* Deputy Arms' conduct did not amount to deliberate indifference.
26   Thus, Willing's municipal liability claim against Nye County relating to Deputy Arms' conduct on
     April 20, 2014 fails as a matter of law.

27          [5] In fact, if Deputy Arms did tell Healthcare Partners' nurse not to submit the referral, he
28   arguably did not act in compliance with NCDC policy.

1        In support of his allegation that the defendants had an unwritten policy of causing indigent

2    inmates to not be referred for follow-up diagnosis or treatment unless they are dying, Willing relies

3    solely on his own speculation and two of his experiences related to the treatment of his fractured

4    clavicle.   But even taking these facts in the light most favorable to Willing, two examples are

5    insufficient as a matter of law to demonstrate a longstanding policy or custom that is the "standard

6    operating procedure" of the municipality. *See Meehan v. Cty. of Los Angeles*, 856 F.2d 102, 106-

7    107 (9th Cir. 1988) (two instances not enough to establish custom).   Willing's arguments and

8    evidence do not provide the duration, frequency, and consistency necessary to prove a "persistent

9    and widespread" informal custom to deny indigent inmates medical care to avoid paying for that

10   care. *Trevino*, 99 F.3d at 918

11       Willing also attempts to tie the unwritten policy to his allegation that NCDC's responses to

12   his grievances amounted to deliberate indifference.   Specifically, he asserts that the jail personnel

13   continued to take him to Healthcare Partners for treatment even though they knew about the

14   unwritten policy between Nye County and Healthcare Partners.   However, Healthcare Partners

15   appeared to act as Willing's primary medical care provider as it provided him with medical care on

16   at least eight occasions for a variety of non-emergent medical issues.  The fact that NCDC continued

17   to take him there for treatment does not demonstrate a longstanding municipal practice or custom

18   to deny indigent inmates medical care.

19       For these same reasons, Willing's *Monell* claims against Healthcare Partners fail as a matter

20   of law.  Willing has not demonstrated that Nye County had any policy, written or unwritten, to deny

21   indigent inmates medical care to avoid paying for the treatment.   Thus, it follows that Healthcare

22   Partners cannot share in enforcing (or be liable for) a non-existent policy, practice, or custom.

23   Willing offers no other evidence that another Healthcare Partners policy, practice, or custom caused

24   him injury.  Accordingly, summary judgment will be granted in favor of both Healthcare Partners

25   and Nye County if they are able to properly authenticate the exhibits supporting their motions.

26   **D.   Additional Motions**

27       Based on the above analysis of the summary judgment motions, if defendants are able to

28   properly authenticate the exhibits supporting their motions, I will deny the following motions as

1   moot: (1) Willing's Motion in Evidence in Support of Opposition to Summary Judgment (ECF No.

2   91), (2) Nye County and Deputy Arms' Motion for Leave to Supplement (ECF No. 123), Healthcare

3   Partners' Joinder in that motion (ECF No. 124), Willing's Motion for Nye County to Show Good

4   Cause for Violating Discovery Request or Alternative to Compel (ECF No. 113), and Nye County's

5   Motion to Strike (ECF No. 109).

6   **IV.    CONCLUSION**

7        IT IS THEREFORE ORDERED that the defendants shall have until **September 27, 2016**

8   to submit supplemental affidavits authenticating the exhibits attached to their respective motions

9   for summary judgment.  If the exhibits are properly authenticated, I will grant their motions for

10  summary judgment (ECF Nos. 73, 95, and 110).  If they fail to properly authenticate the exhibits,

11  I will deny the motions.

12       DATED THIS 19th day of September, 2016.

13                                                        _____

14                                                        ANDREW P. GORDON
                                                          UNITED STATES DISTRICT JUDGE

15